In the Matter of **HUNTERBROOK BUILDING CORP.**, Whitehill Building Corp., Mohansic Building Corp. and 300 Building Corp., Debtors-Appellants.

Richard P. Schulz et al., Petitioning Creditors-Appellants.

Ardisco, Ltd., and New Jersey Industries, Inc., Answering Creditors-Appellees.

No. 222, Docket 25952.

United States Court of Appeals Second Circuit.

Argued March 3, 1960.

Decided March 23, 1960.

Joseph R. Pisani, New Rochelle, N. Y. (Gaynor, Mosher, Freeman & Pisani,

New Rochelle, on the brief), for petitioning creditors-appellants.

Irving Like, Babylon, N. Y. (Reilly & Like, Babylon, N. Y., on the brief), for debtors-appellants.

George Natanson, New York City, (Harte, Natanson & Gordon, New York City, on the brief), for answering creditor Ardisco, Ltd., appellee.

George H. Cohen, New York City, for answering creditor New Jersey Industries, appellee.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

PER CURIAM.

Debtors are corporations which were engaged in developing land in the Yorktown Heights section of Westchester, purchased in February, 1957 from New Jersey Industries, Inc., known as the Murphy tract. Much work was done in installing roads, sewers and water supply, in building a sewage disposal plant and in constructing homes under agreements with numerous vendees. In March, 1959, building operations ceased. At that time 49 houses had been completed and sold. There were three model homes, 10 unfinished houses about 95% completed, and 24 unfinished houses about 65% completed. Since then debtors have engaged in no business or activity.

The cessation of building operations was caused by debtors' failure to pay subcontractors who have filed mechanic's liens of some $330,000. The tract is subject also to 39 building loan mortgages aggregating $351,000, held by Dime Savings Bank of Brooklyn, which are first liens on the respective developed plots; a $153,000 purchase money mortgage, held by New Jersey Industries, Inc., which is a first lien on the undeveloped portion; a $128,000 mortgage held by Ardisco, Ltd., which is a second lien on the undeveloped property and the partially completed houses; and some 140 vendee's liens for contract deposits aggregating $250,000—a total of $1,212,-000. The New Jersey and Ardisco mortgages are in default and were in foreclosure in the Supreme Court of New York, Westchester County. Foreclosure of the Dime Savings Bank mortgages has been avoided only through substantial payments for interest, taxes and insurance premiums by Ardisco.

On August 5, 1959, three creditors with claims exceeding $5,000, acting as a creditors' committee on behalf of a Home Buyers Association, filed a petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 526, for the reorganization of the debtors. The petition stated that for most of the home buyers the down payments represented their life savings. The debtors consented to the petition. Ardisco and New Jersey Industries filed answers asking that the petition be dismissed as not filed in "good faith" within the meaning of § 146 of the Bankruptcy Act, 11 U.S.C.A. § 546, particularly since "it is unreasonable to expect that a plan of reorganization can be effected," as required by § 146(3). Judge Levet held a hearing on August 26, the foreclosures in the New York courts having been stayed in the meanwhile. On September 10 he handed down an opinion, findings of fact and conclusions of law, sustaining the objection in the answers and dismissing the petitions. An order was entered accordingly, whence petitioners and the debtor have appealed.

Petitioners' evidence was that the property was worth $1,028,000. However a considerable part of this was the value of uncompleted houses which could be realized only upon completion. Except for escrow deposits of $65,000 not presently available, the debtors had no funds save $3,112.79 held by the creditors' committee. Judge Levet found that the Dime Savings Bank will not make any further advances upon its existing building loans or any further building loans, and that Ardisco, whose mortgage is in default, will no longer comply with the provisions whereby a home was to be released from the second mortgage on payment of $1,000. There was no indication where, under these circumstances, funds

required for completion could be obtained —although petitioners state in their brief that after the hearing they received replies to a questionnaire sent to the home buyers wherein some two-thirds of the 40% who responded indicated a willingness to advance an additional $500 as a deposit to a Chapter X trustee with "full assurance that your money would be protected by the court in every way," and also, "as a last-ditch alternative," to add $1,000 to the purchase price, $500 of which would be an additional deposit.

Although petitioners have understandably indicated their weariness with judicial expressions of sympathy, we cannot refrain from joining the District Judge in these, at the same time that we uphold his ruling. Petitioners are correct in saying that § 146(3) does not require the certainty of a successful plan of reorganization. However "There must be fair assurance that the attempt to reorganize will be followed by success," In re Blinrig Realty Corp., 2 Cir., 1940, 114 F.2d 100, 101, or at least, as said in Manati Sugar Co. v. Mock, 2 Cir., 1935, 75 F.2d 284, 285. "There must be a showing that the petitioners have a basis for expecting that a reorganization can be effected." We find no such basis here. The condition to any constructive result is completion and sale of the unfinished houses. Yet the funds required for this are nowhere in sight, even if we could take notice of the answers to the questionnaire, nor do we see how they could be so long as parcels cannot be released from the blanket second mortgage. When we add the stated unwillingness of New Jersey Industries to consent to any plan of reorganization that does not provide for full and immediate payment of its mortgage, see Mokava Corp. v. Dolan, 2 Cir., 1945, 147 F.2d 340, 344; Arey & Russell Lumber Co. v. American National Bank & Trust Co., 4 Cir., 1953, 201 F.2d 508, and a somewhat similar attitude by Ardisco, the excess of the debts over petitioners' own appraisal of the value of the assets, and the adverse effect of further delay on the rights of senior lienors, it becomes apparent that Judge Levet's

dismissal, regrettable though this be from petitioners' standpoint, was the only course consistent with the command of § 146(3) of the Bankruptcy Act.

Order affirmed.